UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | |
| ) | Bankruptcy Case |
| CHRISTOPHER MICHAEL BRASWELL, ) | No. 13-60564-fra13 |
| ) | |
| Debtor. ) | MEMORANDUM OPINION |

Trustee has objected to confirmation of Debtor's amended chapter 13 plan of reorganization (Amended Plan) on a number of grounds, most notably on grounds of lack of good faith and the failure to provide interest to unsecured claimants in Debtor's 100% plan. A confirmation hearing was held on June 11, 2013, and the matter was taken under advisement. For the reasons that follow, confirmation of Debtor's Amended Plan will be denied.

## FACTS

The Debtor is married and lists four children on Schedule J. Both Debtor and his spouse have salaried jobs and the Debtor also shows net monthly income from his construction business. Debtor filed his chapter 13 bankruptcy case on February 27, 2013. Because the combined income of the Debtor and his spouse exceeds the applicable median income for their family size, he was required to prepare and file with his Form 22C the Statement of Current Monthly and Disposable Income (the "Means Test"), which revealed a monthly disposable income amount of $1,531 and an applicable commitment period of five years. Schedules I and J, also filed with the bankruptcy petition, calculated net monthly income of $1,651. The original plan of reorganization filed with the bankruptcy petition provided a monthly plan payment of $725 to

MEMORANDUM OPINION-1

be used for payment of Debtor's attorney fees and the trustee fees, and to pay unsecured claimants 100% of their claims over a period of 53 months.  An Amended Plan was thereafter filed which provides for the same 100% payout over 53 months, but at $500 per month.

Trustee objected to the Debtor's Amended Plan on a number of technical grounds as well as the legal questions posed under 11 U.S.C. §§ 1325(a)(3) and 1325(b)(1) by Debtor's failure to devote 100% of his projected disposable income to the plan.

## DISCUSSION

A.  Good Faith - 11 U.S.C. 1325(a)(3):

The Trustee objected to the fact that Debtor proposes to devote only 30% of his monthly disposable income to his chapter 13 plan payment ($500 / $1,651) while retaining the remainder.  Moreover, the $1,651 monthly disposable income figure is, according to the Trustee, projected to increase to $2,200 when a vehicle payment attributable to Debtor's spouse is paid off.  Trustee argues that this evidences a lack of good faith[1] because it unfairly elevates the Debtor's self-interest over the rights of his creditors, and because it unfairly shifts the risk of loss to creditors in the event the Debtor suffers post-petition financial problems or simply decides he no longer wishes to continue with the chapter 13 case.

The Debtor counters that if a debtor has complied with the requirements set forth in § 1325(b)(1)(A)[2] by providing that all unsecured creditors will be paid in full, the Court may not find a lack of good faith solely for the debtor's failure to propose greater monthly payments to unsecured creditors.

---

[1] Section 1325(a)(3) provides that the court shall confirm a plan if – "(3) the plan has been proposed in good faith and not by any means forbidden by law;"

[2] Section 1325(b)(1):
If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
    (A) the value of property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

MEMORANDUM OPINION-2

In the Ninth Circuit, the Court of Appeals has provided the standard by which a lack of good faith should be measured:

> (1) Whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner;
>
> (2) The debtor's history of filings and dismissals;
>
> (3) Whether the debtor intended to defeat state court litigation; and
>
> (4) Whether egregious behavior is present.

*Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 122-23 (9th Cir. 1999). Trustee argues that the actions of the Debtor are an unfair manipulation of the Bankruptcy Code. The court in *In re Stewart-Harrel*, 443 B.R. 219, 224 (Bankr. N.D. Georgia 2011) stated that it would decide the matter of good faith in these circumstances on a case-by-case basis which would include a series of factors, such as the extent of the difference in payment and the reasons for the difference in payment. Courts in this Circuit, however, are bound by the holding of *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120 (9th Cir. 2013), which appears to rule out a finding of lack of good faith in these circumstances.

In *Welsh*, the Chapter 13 trustee objected to confirmation of the debtors' plan on grounds that it was not proposed in good faith and that debtors were not committing 100% of their disposable income to plan payments. The issue was whether Social Security income, which is specifically excluded from current monthly income in calculating disposable income, and the deduction of expenses that are expressly allowed by the Code as part of the "Means Test" could be used as a basis for a finding that the plan was not proposed in good faith. The Court, in holding that those factors could not be the basis for a finding of lack of good faith, stated that "[j]ust as we cannot add to what Congress has enacted 'under the guise of interpreting 'good faith,' so too we cannot ignore the explicit repayment requirements that Congress has chosen to enact." *Id.* at 1131. "Having already concluded that Debtor's plan fully complied with the Bankruptcy Code, it is apparent that Debtors are not in bad faith merely for doing what the Code permits them to do." *Id.* at 1132 (citing quote from *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 227 (5th Cir. 2012)).

// // //

MEMORANDUM OPINION-3

Applying the holding of *Welsh* to the facts of the present case: so long as the repayment requirements of § 1325(b)(1) are met, the court cannot find a lack of good faith solely on the basis that Debtor is paying less per month than the amount of his projected monthly disposable income. The next issue we must confront is whether the requirements of § 1325(b)(1)(A) are met with a 100% payment of unsecured claims over the term of a chapter 13 plan (i.e. no accommodation for the time-value of money), when less than all of Debtor's projected disposable income is devoted to the plan. The Trustee argues that an appropriate rate of interest must be applied in these circumstances, while the Debtor argues that there is no such requirement.

B. Interest Requirement under § 1325(b)(1)(A):

The court in *In re Hight-Goodspeed*[3] was confronted with the trustee's objection to a debtor's proposed chapter 13 plan under which considerably less than debtor's projected disposable income would be devoted to plan payments, but which paid unsecured creditors in full, without interest. It noted that the opinions that addressed the requirements of § 1325(b)(1)(A) were relatively few and were divided. Further, while Colliers sided with the Debtor's view, 8 *Collier on Bankruptcy*, ¶ 1325.11[3] (16th ed.), Norton and Lundin agree with the trustee. 7 *Norton Bankr. L. & Prac* (3d ed.), § 151:19; Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th edition, § 168.1, at ¶ 6. *Hight-Goodspeed* at 463. The court interpreted the phrase "as of the effective date of the plan – ," which is found in § 1325(b)(1) and applies to both subsections (A) and (B), as requiring a present value calculation when subsection (A) is chosen. The court acknowledged that the Code, when requiring a present value calculation, normally uses the wording: "the value, as of the effective date of the plan, of the property to be distributed . . . is not less than. . . ," while subjection (A) is read as: "as of the effective date of the plan – (A) the value of property to be distributed under the plan on account of such claim is not less than the amount of such claim." In the court's view, the meaning of the words is not changed in the two uses and "§ 1325(b)(1)(A) is phrased somewhat differently because Congress apparently wanted the concept of the effective date of the plan to apply to both the valuation of the distribution under (A) and to the disposable income alternative of (B)." *Id.* at 464-65.

---

[3] 486 B.R. 462 (Bankr. N.D. Indiana 2012).

MEMORANDUM OPINION-4

1    The court in *In re Stewart-Harrel*, 443 B.R. 219 (Bankr. N.D. Georgia 2011) looked at the same set
2 of facts and concluded that there is no interest requirement in § 1325(b)(1)(A).  Rather, it found that the
3 better interpretation of the phrase "as of the effective date of the plan" in § 1325(b)(1) "refers to the date as of
4 which the court is to make the determination of either (A) (payment in full) or (B) (payment of all projected
5 disposable income)."  *Id.* at 222.  It noted that interpreting the phrase "as of the effective date of the plan" to
6 require the present value of distributions on claims may make sense with respect to subsection (A), but would
7 be meaningless with respect to subsection (B).  *Id.* at 222-23.  It further noted that finding a present value
8 requirement in subsection (A) would create certain anomalies such that interest would be required on claims
9 of general unsecured creditors under § 1325(b)(1)(A), but not on priority claims under § 1322(a)(2) and that
10 the trustee's interpretation would require the payment of interest where the best interest of creditors test did
11 not.  *Id.* at 223 to 24.  The *Hight-Goodspeed* court acknowledges these anomalies, but as to the second
12 concern, the payment of interest where the best interest of creditors test does not, counters that it sees nothing
13 untoward in such a result, as interest represents the time value of money and the risk of default.  As to the
14 difference between priority and non-priority unsecured claims, the court attributes the disparate effect on
15 successive amendments to the Bankruptcy Code which have created certain distortions.  *Hight-Goodspeed* at
16 465.

17    The better interpretation is the one found in *Hight-Goodspeed*.  The court found that in cases where
18 the trustee or an unsecured creditor objects, § 1325(b)(1) allows the debtor to choose subsection (B) and
19 devote all of his projected disposable income to the plan or, if the debtor wishes to devote less of his income
20 to the plan, he may chose subsection (A).  The price for doing so, however, is that unsecured claims must be
21 paid in full with interest.

22    The two statements "the value, as of the effective date of the plan, of property to be distributed . . ."
23 and "as of the effective date of the plan – the value of property to be distributed . . ." have the same meaning
24 and require a present value calculation.  In order to apply to both subsections (A) and (B) and make sense, the
25 second wording was used in § 1325(b)(1).  The Supreme Court in *Hamilton v. Lanning*, 130 S.Ct. 2464
26 (2010) interpreted the phrase "as of the effective date of the plan" with respect to subsection (B) as the date

MEMORANDUM OPINION-5

to measure projected disposable income. *Id.* at 2474. In other words, the effective date of the plan, being the date of confirmation[4], is the date at which the value and amount of projected future income should be calculated. Unlike the court in *Stewart-Harrel,* I do not find that the *Hamilton v. Lanning* holding is at odds with an interpretation of § 1325(b)(1)(A) requiring the payment of interest.[5] Clearly, the date of confirmation is the date at which the court must determine whether the requirements of subsection (A) or subsection (B) have been met, as stated in *Stewart-Harrel*. The date of confirmation is the date the court must determine generally whether the requirements of confirmation have been met. With respect to subsection (A), "the value of property to be distributed under the plan" must be measured as of the date of confirmation, and must be "not less than the amount of such claim." This interpretation would require the payment of interest, because a future income stream must be discounted to present value, and is consistent with the interpretation advanced in *Hamilton v. Lanning* that projected disposable income be measured as of the date of confirmation.

C. Proper Rate of Interest to be Used Under § 1325(b)(1)(A):

In *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), the Supreme Court applied a "formula approach" to determine the appropriate rate of interest to be paid to an secured creditor subject to a "cramdown" in Chapter 13. I believe the same approach applies here. Unsecured creditors are expected to bear a greater risk of failure in the proposed plan because they are to be paid over a greater time period.

The Court described the formula approach:

> Taking its cue from ordinary lending practices, the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. The court must

---

[4] *Hamilton v. Lanning* at 2474.

[5] *See Stewart-Harrel* at 223.

MEMORANDUM OPINION-6

>therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment. Some of this evidence will be included in the debtor's bankruptcy filings, however, so the debtor and creditors may not incur significant additional expense.

*Id.* at 478-79. The court noted that "if the court could somehow be certain a debtor would complete his plan, the prime rate would be adequate to compensate any secured creditors forced to accept cramdown loans." *Id.* at 479, n.18. The court goes on to note that starting at the low prime rate and adjusting upwards "places the evidentiary burden squarely on the creditors" – or, in this case, the trustee. *Id.* at 479.

Rather than put the parties to the additional expense of a hearing on interest (which would surely cost more than what is at stake here), the Court will determine, from the record and filings available to it, what the appropriate rate is in this case. The prime rate published by the Wall Street Journal on June 26, 2013, is 3.25% per annum.[6] The creditors' risk is enhanced by several factors:

1. They must wait 53 months before being paid in full, as opposed to being paid in less than 18 months if all of the Debtor's monthly disposable income is used for plan payments.

2. The debtor's schedules indicate that, while he and his wife have substantial salaries, they have little in the way of unencumbered or non-exempt assets, and virtually no liquidity. This increases the risk to creditors in the event of an unanticipated expense or loss of income.

3. Neither the plan, nor anything else in the record, indicates what the debtor will do with the disposable income not paid each month, amounting to over $1,100 a month. If these funds are not saved, or employed in some other manner protecting the creditors' interests, their risk is enhanced.

On the Debtor's side, the creditor's claims will not be discharged if they are not paid in full. This provides some incentive to the debtor (although less as the claims are paid down) and gives the creditors the right to enforce any unpaid claims after the case is closed.

---

[6] See http://www.bankrate.com/rates/interest-rates/wall-street-prime-rate.aspx (Accessed by the court on June 26, 2013.) According to the site, the Wall Street Journal surveys 30 large banks and publishes a "consensus" prime rate. "It's the most widely quoted measure of the prime rate, which is the rate banks will lend money to their most-favored customers." *Id.* It appears that 3.25% has been the WSJ prime for over a year.

MEMORANDUM OPINION-7

Taking these factors into account the court finds that the "appropriate risk adjustment" is 2.5% per annum, and that the interest rate to be applied is therefore 5.75% per annum.

D.  Plan Length:

The Trustee argues that the court should use pre-BAPCPA[7] practice and limit the Debtor to a 36-month plan in these circumstances, even though current law provides for an "applicable commitment period" for "above median" debtors of "not less than five years." § 1325(b)(4)(A)(ii). This is so, according to the Trustee, so that an "above median" debtor is not treated more favorably than a "below median" debtor, who is limited to a 36-month plan. However, disparate treatment of "above median" and "below median" debtors under the Code has been recognized by the courts. *See e.g. Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 858 (9th Cir. 2008) ("above median" debtor with negative projected disposable income as reported on Form 22C has no applicable commitment period); *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120 (9th Cir. 2013)(deductions for "luxury items" allowed to "above median" debtors in calculating disposable income pursuant to Form 22C cannot be basis of good faith objection). Accordingly, the Debtor in this case has an "applicable commitment period" of "not less than five years," unless the plan provides for "payment in full of all allowed unsecured claims over a shorter period." § 1325(b)(4)(B).

E.  Remaining Objections to Confirmation:

1. Paragraph 2(f)(2) of Plan: The court agrees that the plan should be amended to read that the holders of allowed, nonpriority unsecured claims will receive "a minimum" of 100% of their claims.

2. Tax Refunds: Trustee objects to ¶ 12 of the Plan which allows the Debtor to retain tax refunds attributable to the non-filing spouse's tax payments and applicable credits. He feels the provision is too vague and will invite future litigation and that all tax refunds attributable to a "married filing jointly" tax return should be paid into the plan. Debtor objects and argues that the tax refunds attributable to the withholdings and credits of the non-filing spouse are the property of the non-filing spouse and are not property of the estate. Mindful of the Trustee's misgivings, the court, however, agrees with Debtor that the

---

[7] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

MEMORANDUM OPINION-8

non-filing spouse's attributable tax refunds should not be required to be paid into the plan.  However, the plan must be amended to provide more specific language acceptable to the Trustee in calculating the non-debtor spouse's share of any tax refunds.

3. Surrender of Real Property: The court agrees with Trustee that ¶ 13 of the Plan should be amended to strike the phrase "in full satisfaction of their claims." Upon surrender of the property, the creditor's right to any unsecured deficiency judgment should be determined pursuant to Oregon law.

## CONCLUSION

For the foregoing reasons, the Debtor's chapter 13 plan cannot be confirmed as currently proposed.  If the Debtor wishes to pay less than his projected disposable income into the plan, then he must pay all unsecured claims in full, with interest calculated at 5.75% per annum, unless other terms acceptable to the Trustee are made.  An order will therefore be entered by the Court denying confirmation and providing Debtor 21 days to file an amended chapter 13 plan consistent with this memorandum opinion.

FRANK R. ALLEY, III
Chief Bankruptcy Judge